**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEIGTECH EAST BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>LUTRON ELECTONICS CO., INC.<br><br>Defendant. | Civil Action No: ___________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff GeigTech East Bay LLC d/b/a J Geiger Shading Technology ("Plaintiff" or "J Geiger") files this Complaint against Defendant Lutron Electronics Co., Inc. ("Defendant" or "Lutron") for the cause of action of infringement of U.S. Patent No. 10,822,872, J Geiger alleges as follows:

## NATURE OF THE ACTION

1. This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.

## PARTIES

2. Plaintiff J Geiger is a South Carolina limited liability company with a place of business located at 7421 Industry Drive, North Charleston, South Carolina 29418.

3. Upon information and belief, Defendant Lutron is a Pennsylvania corporation having a principal place of business at 7200 Suter Road, Coopersburg, Pennsylvania 18036, and can be served through its registered agent, Hoffinger Friedland Dobrish & Stern, P.C., 110 East 59th Street New York, New York, 10022.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under at least 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a).

5. Defendant is subject to this Court's specific and general personal jurisdiction due to their substantial business in this forum. For example, upon information and belief, Defendant is subject to the specific personal jurisdiction of this Court because J Geiger's claims for patent infringement arise from Defendant's acts of infringement in the State of New York.

6. These acts of infringement include selling infringing products in the State of New York and placing infringing products into the stream of commerce through an established distribution channel with full awareness that substantial quantities of the products have been shipped into the State of New York.

7. Defendant operates a "Residential Experience Center" in this District at 979 Third Avenue, Suite 319, New York, NY 10022 and a "Commercial Experience and Training Center" at 1 Penn Plaza, Suite 1714, New York, NY 10119.

8. This Court has personal jurisdiction over Defendant under the New York long-arm statute, NY CPLR § 302 (2012).

9. Based upon at least the above, Defendant has a regular and established place of business in this District, and thus, venue is proper in this judicial district under 28 U.S.C. § 1400(b) and 28 U.S.C. §§ 1391(b) and (c).

## BACKGROUND

10. James Geiger, founder and president of J Geiger, has been a pioneer and entrepreneur in the field of home integration for over 20 years.

11. Mr. Geiger got his start in audio visual ("AV") technology as a sales representative for Video Concepts, Inc. and then became an AV integrator in Charleston, South Carolina.

12. AV integration involves the installation and coordination of various types of home electronic systems and technology, such as home theater, audio systems, lighting systems, and window shades.

13. Mr. Geiger started his own AV integration company in 2003 (HeAVi LLC), which grew into a very successful business.

14. Mr. Geiger first installed window shades as an integrator around 1999.

15. Traditionally, shades were a design afterthought. As such, it was standard to conceal mounting hardware with a "ceiling pocket," "valance," or "fascia" as shown in the representative pictures below.

- "Ceiling Pocket": Perimeter system used to hide shades in the ceiling.



- "Valance": Decorative drapery hung above a window to screen the curtain fittings.



- "Fascia": A wooden board or other piece of material used to conceal the roller shade from view.



16. Around 2011, Mr. Geiger devised a new solution for exposed window roller shades ("roller shades") that did not require them to be hidden by the traditional methods mentioned above. This concept would ultimately become the "J Geiger Shading System."

17. Mr. Geiger began working on his radical solution in his Charleston home where he first designed his unique, exposed mounting hardware.

18. In 2012, Mr. Geiger devised a method to conceal electrical wiring inside a passage through the roller shade bracket.

19. Mr. Geiger's new hardware was elegant and distinct from traditional methods of window dress and also allowed for screws and wires to be concealed from view.

20. Mr. Geiger realized these inventions were a complete shift in the world of window shades with the potential to create a brand new product segment in this industry.

21. With Mr. Geiger's revolutionary shade design and shading technology would cease to be an afterthought for designers and architects; instead, shading technology and design, using J Geiger's Shading System, would become an integral part of home design.

22. This is illustrated by the following pictures, comparing traditional shading systems to J Geiger's revolutionary, inventive, and ornamental designs of its jamb, center, and end brackets:

| Representative Lutron Jamb Brackets | J Geiger's Jamb Bracket |
|---|---|
|  |  |

| Representative Lutron Prior Center Brackets | J Geiger's Center Bracket |
|---|---|
|  |  |

| Representative Prior End Brackets | J Geiger's End Bracket |
|---|---|
|  |  |

23. Though the result of the first installation of the J Geiger Shading System was beautiful and unique, industry insiders were initially skeptical. In a complacent industry, Mr. Geiger could not find an industry partner willing to help bring his revolutionary concept to scale.

24. So instead, Mr. Geiger set out on his own to bring his invention to the attention of architects, designers, builders, and consumers. He ran an ad in Dwell Magazine in June of 2012 and immediately received hundreds of inquiries marveling at his elegant exposed roller shades. With the full support of his wife and two boys, Mr. Geiger hit the road and began telling his story of innovation and design. By August of 2014, J Geiger had opened offices in Los Angeles and Manhattan and caught the attention of the world's foremost designers and architects.

25. J Geiger's patented exposed shading mechanism conceals all of the "ugly parts" that would be exposed in a normal shade system. This was something that other shading systems had never offered.

26. J Geiger's invention is widely recognized and praised by architects and designers throughout the United States and the world. J Geiger's innovations to the shading industry have proven popular in the marketplace and the company's sales have consistently grown.

27. Upon information and belief, Defendant introduced its infringing Palladiom Shading System (discussed in more detail below) in September 2017.

**PATENT-IN-SUIT**

28. J Geiger is the owner and the assignee of U.S. Patent No. 10,822,872 (the "'872 patent"), issued on November 3, 2020 and entitled "SHADE BRACKET WITH CONCEALED WIRING".

29. J Geiger holds the exclusive right to license the '872 patent.

30. J Geiger has ownership of all substantial rights in the '872 patent, including the right to exclude others and to enforce, sue, and recover damages for past and future infringement. A true and correct copy of the '872 patent is attached hereto as Exhibit A.

31. The '872 patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

**ACCUSED PRODUCTS**

32. Upon information and belief, Defendant makes, uses, offers to sell, sells, and/or imports its Palladiom Shade System and its components. Such products and components include, but are not limited to its end brackets and center brackets. These products, and any of Defendant's other similar products, are collectively referred to herein as the "Accused Products".

33. Examples of the end and center bracket of the Palladiom Shade System are depicted below:







https://www.lutron.com/en-US/Products/Pages/ShadingSystems/PalladiomShades/DesignOptions.aspx.

34. Upon information and belief, the Accused Products are offered for sale and sold throughout the United States, including within this District.

35. Upon information and belief, Defendant has purposefully and voluntarily placed the Accused Products into the stream of commerce with the expectation that these products will be purchased and used by end users in the United States, including end users in this District.

36. Upon information and belief, Defendant provides direct and indirect support concerning the Accused Products to end users, including end users within this District.

**INFRINGEMENT OF U.S. PATENT NO. 10,822,872**

37. J Geiger alleges and hereby incorporates by reference every allegation made in the foregoing paragraphs of this Complaint as if each were separately set forth herein.

38. In violation of 35 U.S.C. § 271, Defendant has directly infringed and continues to directly infringe, both literally and/or under the doctrine of equivalents, the ’872 patent by making, using, offering for sale, selling, and/or importing the Accused Products in the United States, including within this District, that infringe at least claims 1-4 of the ‘872 patent without the authority of J Geiger.

39. The claims of the ‘872 patent are presumed valid.

40. One or more component of the Lutron Palladiom System is a fastening device for supporting a roller window shade assembly.

Palladiom Shading System

In 1993, Lutron established a new benchmark in shades with our quiet motorized shading system. Now, we’re redefining the automated shades category with the Palladiom Shading System. They’re designed for exposed applications – to be installed without a fascia, pocket, or recess – and look beautiful from every angle.



https://www.lutron.com/en-US/Products/Pages/ShadingSystems/PalladiomShades/Overview.aspx

41. One or more component Lutron Palladiom System is a bracket configured to be carried by a support surface.




https://www.lutron.com/TechnicalDocumentLibrary/Palladiom_Shading_System_Spec_Submittal.pdf.

42. The Lutron Palladiom System includes a side in the bracket configured to engage the support surface so that the bracket extends away from the support surface to carry a roller window shade assembly.




https://www.lutron.com/TechnicalDocumentLibrary/Palladiom_Shading_System_Spec_Submittal.pdf

43. The side of the Lutron Palladiom bracket configured to engage the support surface is at least substantially flat to facilitate the side to bear against the substantially flat support surface, such as a wall.




https://www.lutron.com/en-US/Products/Pages/ShadingSystems/PalladiomShades/DesignOptions.aspx.

44. The Lutron Palladiom System includes a passage in the bracket configured to receive an electrical wire extending from the support surface through the bracket to a motor carried by the roller window shade assembly.




Palladiom Shades Installation Guide.

45. The Lutron Palladiom System includes bracket with a first surface and a second surface each extending substantially perpendicular to the side of the bracket, and wherein the passage extends between the first surface and the second surface.

46. For example, the center bracket includes bracket with a first surface and a second surface each extending substantially perpendicular to the side of the bracket, and wherein the passage extends between the first surface and the second surface. An exemplary center bracket component of the Palladiom Shading System is shown below:

| | | |
|---|---|---|
| | | |

47. The Lutron Palladiom System includes a bracket configured to obscure the electrical wire when the bracket is coupled to the support surface and supports the roller window shade assembly.


LUTRON Palladiom Shading System Exposed Motorized Shade

085560g 8 04.23.20

Aesthetic Enhancements

Concealed Wiring

Bracket-integrated power connection combines with in-wall wire management accessories (details on page 11), for fully-concealed wiring



https://www.lutron.com/TechnicalDocumentLibrary/Palladiom_Shading_System_Spec_Submittal.pdf.

48. The Lutron Palladiom System includes a bracket configured to obscure the electrical wiring when the bracket is coupled to the support surface and supports the roller window shade assembly; wherein the side of the bracket is at least substantially flat to facilitate the side to bear against a substantially flat support surface. Lutron has described its Palladiom Shading System as shown below:

## Palladiom Shading System

Lutron Palladiom Motorized Roller Shades are ideal for exposed applications. Controlled by an ultra-quiet, precision Sivoia QS Palladiom drive, these shades are mounted on solid aluminum brackets that completely conceal wiring and offer a refined aesthetic in a variety of finishes to match any setting.

Palladiom_Shading_System_Spec_Submittal.pdf, p. 1.

49. The Lutron Palladiom System includes a bracket with a projection configured to engage the roller window shade assembly, and wherein the projection is configured to limit rotation of a portion of the roller window shade assembly. *See* below, examples of Lutron protections on Lutron Palladiom brackets highlighted in yellow.

<table>
<tr><th>Palladiom End Bracket</th><th>Palladiom Center Bracket</th></tr>
<tr><td>
</td><td>
</td></tr>
</table>

https://www.lutron.com/TechnicalDocumentLibrary/Palladiom_Shading_System_Spec_Submittal.pdf

50. The Lutron Palladiom System includes a surface opposite the side configured to engage the support surface that has a rounded shape and is visible when the bracket is carrying the roller window shade assembly.







https://www.lutron.com/en-US/Products/Pages/ShadingSystems/PalladiomShades/DesignOptions.aspx.

51. As seen in the images above, the Lutron Palladiom System allows the roller window shade assembly to extend substantially parallel to the support surface when the bracket is coupled to the support surface and supports the roller window shade assembly.

52. The Lutron Palladiom Shade bracket's rounded outer circumference is visible and available in various finishes:




https://www.lutron.com/en-US/Products/Pages/ShadingSystems/PalladiomShades/DesignOptions.aspx.

53. Accordingly, as explained in the previous paragraphs, Defendant has and continues to directly infringe at least claims 1-4 of the '872 patent, both literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing into the United States the Accused Products without the authority of J Geiger.

54. Defendant has been on notice of the '872 patent since at least filing of this Complaint. *See 3D Sys. V. Formlabs, Inc.*, 2014 U.S. Dist. LEXIS 65127, at *11-13 (S.D.N.Y. May 9, 2014).

55. In addition, in violation of 35 U.S.C. § 271(b), Defendant has indirectly infringed the '872 patent by inducing its customers to directly infringe the '872 patent, both literally and/or under the doctrine of equivalents, at least (1) by providing its customers with instructions on

using the Accused Products, and (2) by making, using, offering for sale, selling, and/or importing devices in the United States the Accused Products, in each case, without the authority of J Geiger.

56. The Lutron Palladiom Shading System's installation instructions direct "factory trained and equipped installers" on how to install Palladiom Shades for customers:

**INTRODUCTION:**

This guide is intended only for factory trained and equipped installers of Lutron's PALLADIOM Shades. The following instructions detail wiring, shade bracket mounting, chassis installation, and setup/operation at a site which has already been planned and prepared using the dedicated wall, ceiling or jamb installation templates according to the PALLADIOM Installation Planning and Template Guide.

Palladiom_Shades_Installation_Guide_Wired_Wireless_045641.pdf, p. 1.

57. Upon information and belief, and in violation of 35 U.S.C. § 271(b), Defendant has indirectly infringed the '872 patent by contribution knowing (1) that the Accused Products would be combined with other components to infringe the '872 patent and (2) that the Accused Products have no substantial non-infringing use.

58. Lutron's Palladiom Shading System's installation instructions direct installers on how to use the Accused Products during installation:

## 2 MOUNT THE SHADE BRACKETS:

**CAUTION:** RISK OF FALLING OBJECTS. Read and follow all instructions for mounting the shade system. Failure to follow these instructions could result in minor to moderate injury.

Align the bracket with the marks or predrilled pilot holes made in the template stage, and fasten using the mounting screws provided or other fasteners appropriate for the mounting surface.

**NOTE:** The mounting holes in all brackets are elongated to allow for adjustment. Confirm that brackets are level and aligned (add shims if necessary), and verify the correct bracket-to-bracket distance before tightening the mounting screws. (For more information about positioning, light gaps, and final adjustment, please refer to section 5 on page 2.)

**End** **Center** **Jamb**




*When concealing the wire housing, the center of the bracket's foot must be concentric with the housing opening ± ⅛ in (3 mm)

**When concealing the wire housing, the housing opening should align with the bracket's wire hole, without mounting screw interference

### Install Finishing Rings

a. Orient a finishing ring as shown and spread it slightly to fit it over and around the bracket-shade interface.
   The lip on the finishing ring fits in the groove on the bracket, and the ring will rotate freely when properly installed.
b. Rotate the finishing ring so that its opening aligns with the opening in the bracket-shade interface as shown.
c. Repeat steps a. and b. to install a finishing ring on each bracket.




Palladiom_Shades_Installation_Guide_Wired_Wireless_045641.pdf, p. 1.



**Hang the Shade in the Mounting Brackets (Idler End First)**

a. Holding both ends of the shade in alignment with the brackets, aim the **idler*** mandrel at the bracket-shade interface opening as shown and insert.
b. Push the mandrel into the bracket until it seats with a click.
c. Repeat steps a. and b. at the drive end of the shade.
d. After both ends of the shade are pushed in and seated, pull back on the shade to confirm it is securely locked into both brackets.



***NOTE:** The idler is spring-loaded, with 1/8 in (3 mm) of travel to allow for installation tolerance. At the correct bracket-to-bracket distance, the idler will be fully compressed. Extension of the idler indicates increased bracket-to-bracket distance, and results in a larger light gap at the idler side of the shade. Refer to section 5 for more information.

Palladiom_Shades_Installation_Guide_Wired_Wireless_045641.pdf, p. 2.

59. Unless enjoined by this Court, Defendant will continue to infringe the ‘872 patent.

60. Because of Defendant’s infringing activities, J Geiger has suffered damages and will continue to suffer damages in the future.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, J Geiger demands a trial by jury on all issues triable as such.

## PRAYER FOR RELIEF

J Geiger requests that this Court find in its favor and against Defendant, and that this Court grant J Geiger the following relief:

A. An adjudication on J Geiger's cause of action that Defendant has infringed the '872 patent;

B. An award of damages to be paid by Defendant adequate to compensate J Geiger for Defendant's past infringement of the '872 patent and any continuing or future infringement through the date such judgment is entered and any other damages allowed by law, including interest, costs, expenses and an accounting of all infringing acts including, but not limited to, those acts not presented at trial;

C. A preliminary and permanent injunction enjoining Defendant and its officers, agents, servants, employees, users, attorneys, and all those persons in active concert or participation with Defendant from the acts described in this Complaint;

D. An award of damages to be paid by Defendant adequate to compensate J Geiger for J Geiger's lost profits for Defendant's past infringement of the '872 patent and any continuing or future infringement through the date such judgment is entered including interest, costs, expenses and an accounting of all infringing acts;

E. Alternatively, an Order requiring Defendant to pay an ongoing royalty for any continued infringement after the date judgment is entered in an amount to be determined at trial or a permanent injunction;

F. An award of pre-judgment and post-judgment interest to the full extent allowed under the law, as well as its costs;

G. A declaration that this case is exceptional under 35 U.S.C. § 285, and an award of J Geiger's reasonable attorneys' fees;

H. A judgment that Defendant's wrongful activities were willful;

I. An Order directing Defendant to recall all infringing products sold and/or distributed and to provide a full refund for all recalled infringing products; and

J. An award to J Geiger of such further relief at law or in equity as the Court deems just and proper.

Date: December 3, 2020

Respectfully submitted,

*/s/ Jed M. Weiss*

Jed M. Weiss, Bar ID JMW-5293
Attorneys for Plaintiff, *GeigTech East Bay LLC*
Cole Schotz P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10025