**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GEIGTECH EAST BAY LLC,<br><br>Plaintiff,<br><br>v.<br><br>LUTRON ELECTRONICS CO., INC.<br><br>Defendant. | No. 1:20-CV-10195-CM<br><br>ECF Case |
| LUTRON ELECTRONICS CO., INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>GEIGTECH EAST BAY LLC,<br><br>Counterclaim-Defendant. | |

## ANSWER AND COUNTERCLAIMS

Lutron Electronics Co., Inc. ("Lutron"), by and through its attorneys, for its Answer to the Complaint of GeigTech East Bay LLC ("GeigTech"):

### Nature of the Action

1. Admits that GeigTech's Complaint purports to commence a civil action for alleged patent infringement "arising under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq*.," and except as so admitted denies the allegations of paragraph 1 of the Complaint.

### Parties

2. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 2 of the Complaint.

3. Admits that Lutron is a corporation organized and existing under the laws of Pennsylvania having a principal place of business at 7200 Suter Road, Coopersburg, Pennsylvania 18036, admits

that Lutron does not contest the sufficiency of service of process in this case, and except as so admitted denies the  allegations of paragraph 3 of the Complaint.

**Jurisdiction and Venue**

4. Admits that the Court has jurisdiction to hear this action under 28 U.S.C. §§ 1331 and 1338(a) and to hear Lutron's counterclaims under 28 U.S.C. § 1367, and except as so admitted denies the allegations of paragraph 4 of the Complaint.

5. Admits that the Court has specific personal jurisdiction with respect to the purported claim stated in GeigTech's Complaint and with respect to Lutron's counterclaims stated herein, and except as so admitted denies the allegations of paragraph 5 of the Complaint.

6. Denies the allegations contained in paragraph 6 of the Complaint.

7. Admits that Lutron operates a "Residential Experience Center" in this district at 979 Third Avenue,Suite 319, New York, New York 10022, and except as so admitted denies the the allegations of paragraph 7 of the Complaint.

8. Admits that the Court has specific personal jurisdiction with respect to the purported claim stated in GeigTech's complaint and with respect to Lutron's counterclaims stated herein, and except as so admitted denies the allegations of paragraph 8 of the Complaint.

9. Admits that venue is proper in this judicial district under 28 U.S.C. § 1400(b), and except as so admitted denies the allegations of paragraph 9 of the Complaint.

**Background**

10. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint.

11. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 11 of the Complaint.

12. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Complaint.

13. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint.

14. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint.

15. Denies the allegations contained in paragraph 15 of the Complaint.

16. Denies the allegations contained in paragraph 16 of the Complaint.

17. Denies the allegations contained in paragraph 17 of the Complaint.

18. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint.

19. Denies the allegations contained in paragraph 19 of the Complaint.

20. Denies the allegations contained in paragraph 20 of the Complaint.

21. Denies the allegations contained in paragraph 21 of the Complaint.

22. Denies the allegations contained in paragraph 22 of the Complaint.

23. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint.

24. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint.

25. Denies the allegations contained in paragraph 25 of the Complaint.

26. Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 26 of the Complaint.

27. Denies the allegations contained in paragraph 27 of the Complaint.

## Patent-in-Suit

28. Denies the allegations contained in paragraph 28 of the Complaint.

29. Denies the allegations contained in paragraph 29 of the Complaint.

30. Admits that Exhibit A to the Complaint appears to be a copy of U.S. Patent No. 10,822,872 (the "'872 Patent"), and except as so admitted denies the allegations of paragraph 30 of the Complaint.

31. Denies the allegations contained in paragraph 31 of the Complaint.

## Accused Products

32. Admits that Lutron makes, uses, offers to sell, sells, and/or imports certain mounting brackets ("Palladiom Brackets") that are adapted for use in certain roller shade systems, refers to Palladiom Brackets for their precise structure and configuration, and except as so admitted denies the allegations contained in paragraph 32 of the Complaint.

33. Admits the allegations contained in paragraph 33 of the Complaint.

34. Admits that "Palladiom Shading System" products, which include Palladiom Brackets, are sold in various locations throughout the United States including in the Southern District of New York, and except as so admitted denies the allegations of paragraph 34 of the Complaint.

35. Admits that Palladiom Brackets and certain roller shade systems that include Palladiom Brackets are offered for sale and sold in various locations throughout the United States including in the Southern District of New York, and except as so admitted denies the allegations of paragraph 35 of the Complaint.

36. Admits that Lutron provides indirect customer support through dealers for roller shade systems that include Palladiom Brackets, including support to end users in the Southern District of New York, and except as so admitted denies the allegations of paragraph 36 of the Complaint.

**Purported Infringement of U.S. Patent No. 10,822,872**

37. Repeats and incorporates paragraphs 1–36 as if fully set forth here.

38. Denies the allegations contained in paragraph 38 of the Complaint.

39. Admits that 35 U.S.C. § 282 provides in part, "Each claim of a patent . . . shall be presumed valid independently of the validity of other claims," and except as so admitted denies the allegations contained in paragraph 39 of the Complaint.

40. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 40 of the Complaint.

41. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 of the Complaint.

42. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 42 of the Complaint.

43. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43 of the Complaint.

44. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies

knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 44 of the Complaint.

45. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 45 of the Complaint.

46. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 46 of the Complaint.

47. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 47 of the Complaint.

48. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 48 of the Complaint.

49. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49 of the Complaint.

50. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 50 of the Complaint.

51. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 51 of the Complaint.

52. Admits that Palladiom Brackets include certain structural features, refers to Palladiom Brackets for the precise structural features that they embody, and except as so admitted denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 52 of the Complaint.

53. Denies the allegations contained in paragraph 53 of the Complaint.

54. Admits that Lutron has been on notice of GeigTech's purported claim in this action since the date Lutron was served with a copy of the complaint in this action, and except as so admitted denies the allegations of paragraph 54 of the Complaint.

55. Denies the allegations contained in paragraph 55 of the Complaint.

56. Admits that Lutron provides certain installation instructions to factory trained installers of shading systems that include Palladiom Brackets, refers to those instructions for their precise contents, and except as so admitted denies the allegations of paragraph 56 of the Complaint.

57. Denies the allegations contained in paragraph 57 of the Complaint.

58. Admits that Lutron provides certain installation instructions to factory trained installers of shading systems that include Palladiom Brackets, refers to those instructions for their precise contents, and except as so admitted denies the allegations of paragraph 58 of the Complaint.

59. Denies the allegations contained in paragraph 59 of the Complaint.

60. Denies the allegations contained in paragraph 60 of the Complaint.

**Jury Demand**

Lutron reserves the right to independent judicial determination of all issues as to which there is no right to trial by jury, including (i) whether the subject matter claimed in the ’872 Patent qualifies as an invention of an inventor; (ii) whether the claims in the ’872 Patent satisfy the particularity requirement of 35 U.S.C. § 112; (iii) whether the subject matter claimed in the ’872 Patent satisfies the non-obvious subject matter requirement of 35 U.S.C. § 103; and (iv) whether Matt Taylor is an inventor of any invention claimed in the ’872 Patent.

**Prayer for Relief**

Lutron denies that GeigTech is entitled to any of the relief requested in paragraphs A–J under the Prayer for Relief heading of the Complaint.

**Defenses**

By alleging the defenses set forth below, Lutron does not assert or admit that it has the burden of proof and/or persuasion with respect to any of them.

**First Defense**
**(Double Patenting)**

The ’872 Patent claims subject matter that was previously patented to GeigTech under U.S. Patent No. 9,327,821 B2 (the “’821 Patent”). The ’872 Patent is invalid and unenforceable under 35 U.S.C. § 101 and controlling precedent, because “no patent can issue for an invention

actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ." *Miller v. Eagle Mfg. Co.*, 151 U.S. 186, 198 (1894).

**Second Defense**
**(Equitable Intervening Rights)**

Lutron reasonably relied on the '821 Patent in designing and launching the Palladiom Shading System product line in the United States. GeigTech's claim for alleged infringement of the '872 Patent is barred, in whole or in part, by equitable intervening rights.

**Third Defense**
**(Invalidity Under 35 U.S.C. § 132—New Matter)**

Subsequent to issuance of the '821 Patent, during prosecution of what the '872 Patent calls "a continuation of application No. 14/997,211," GeigTech amended the written description of its alleged "invention" so as to set up, for the first time, a claim that a "passage" in a roller shade bracket purportedly constituted a patentable feature of the claimed invention. The claims in the '872 Patent are invalid and unenforceable as being directed to "new matter" that GeigTech introduced into the '872 Patent specification in violation of 35 U.S.C. § 132.

**Fourth Defense**
**(Invalidity Under 35 U.S.C. § 101—No Invention)**

The claims in the '872 Patent are invalid under 35 U.S.C. § 101 and controlling precedent because the subject matter claimed in the '872 Patent does not constitute an "invention" of an "inventor" that is eligible for the grant of a patent.

**Fifth Defense**
**(Invalidity Under 35 U.S.C. § 102—Lack of Novelty)**

The claims in the '872 Patent are written so broadly as to encompass subject matter that was in the public domain before May 15, 2011, including equivalents or trivial adaptations of the roller shade brackets disclosed in expired U.S. Patent No. 1,476,160. The claims in the '872 Patent are invalid for failure to satisfy the statutory novelty condition for patentability.

**Sixth Defense**
**(Invalidity Under 35 U.S.C. § 103—No "Nonobvious" Subject Matter)**

The claims in the '872 Patent are written so broadly as to encompass the predictable use of prior art elements according to their established functions. The claims in the '872 Patent are invalid for failure to satisfy the statutory nonobvious subject matter condition for patentability.

**Seventh Defense**
**(Invalidity Under 35 U.S.C. § 112—Lack of Particularity)**

The claims in the '872 Patent do not particularly point out any alleged improvement to the art, but hide and conceal any such improvement within broad recitals of generic elements claimed in combination. The claims in the '872 Patent are invalid for failure to satisfy the particularity requirement of 35 U.S.C. § 112.

**Eighth Defense**
**(Invalidity Under 35 U.S.C. § 115—Deliberate Failure to Name Inventor)**

In Application No. 16/376,814 (the "'814 Application"), James Geiger falsely and deceptively took credit for the work of Matt Taylor, the architect on the ultra-highend construction project for the Charbon Residence depicted in Exhibit 1. As a subcontractor on the Charbon Residence project, Geiger received Taylor's specification of roller window shade brackets having exposed, rounded exterior surfaces and hidden fasteners and wiring. In about mid-2010, Taylor provided Geiger with a sketch of the exposed bracket concept. Later in 2010, Mr. Taylor conceived and communicated to Geiger a concept for a center bracket having exposed, rounded exterior surfaces. Geiger's and GeigTech's failure to name Mr. Taylor as an inventor in the '814 Application was not a result of error, but was a deliberate act designed to cut Taylor out of any patent rights that might result from the filing of the '814 Application. The '872 Patent is invalid by reason of Geiger's and GeigTech's deliberate failure to name Mr. Taylor as an inventor of the subject matter claimed in that patent.

**Ninth Defense**
**(Inequitable Conduct—Deliberate Failure to Name Inventor)**

Besides rendering the '872 Patent invalid as set forth in Lutron's Eighth Defense, above, Geiger's and GeigTech's deliberate failure to name Mr. Taylor as an inventor in the '814 Application was intended to deceive the Patent Examiner and constituted inequitable conduct that renders the '872 Patent unenforceable.

**Tenth Defense**
**(License)**

Lutron has a license from Mr. Taylor to practice any invention that may be disclosed and claimed in the '872 Patent. GeigTech's claim for alleged infringement of the '872 Patent is barred, in whole or in part, by license.

**Eleventh Defense**
**(Exclusive Remedy for U.S. Government Activity)**

Insofar as GeigTech's claim for alleged infringement of the '872 Patent arises from allegedly unauthorized manufacture or use of an invention by or for the United States Government, GeigTech's claim is barred, in whole or in part, by 28 U.S.C. § 1498(a).

**Twelfth Defense**
**(Inequitable Conduct—Unclean Hands)**

The '872 Patent claims priority to application No. 14/401,453 (the "'453 Application"). GeigTech's prosecution of the '453 Application, and GeigTech's attempted assertion of the '821 Patent against Lutron based on the '453 Application, are acts having an immediate and necessary relationship to the equity of GeigTech's claims for alleged infringement of the '872 Patent in this case.

During the prosecution of the '453 Application, Geiger impliedly represented to the United States Patent and Trademark Office ("PTO") that he had disclosed all information known to him to be material to patentability as defined in 37 C.F.R. § 1.56(b). That implied

representation was false. During the years-long prosecution of the ’453 Application Geiger knew, but withheld from the PTO, at least the following facts and information:

1. The subject matter claimed in the ’453 Application was based on and replicated conceptions that Matt Taylor had conceived, explained, drawn out, and provided to Geiger in 2010.

2. The subject matter claimed in the ’453 Application included elements that were copied from one or more pre-existing Somfy tubular motor publications and/or dictated by the design of pre-existing Somfy tube shades and motors that Geiger had been using.

3. Prior to May 15, 2011, Geiger or a company controlled by him had offered for sale or sold, including as a subcontractor on the Charbon Residence project, brackets identical to subject matter claimed in the ’453 Application.

4. Prior to May 15, 2011, brackets identical to the subject matter claimed in the ’453 Application had been described in a printed publication, namely, a 2010-dated HeAVi (High-end Audio/Video integrations) brochure entitled “Window Casing Shade mounts with out Visible Fasteners.”

But for Geiger’s withholding of the information identified in paragraphs 1–4, above, from the PTO, the PTO would not have issued ’821 Patent. The single most plausible inference to be drawn from Geiger’s withholding of the information identified in paragraphs 1–4, above, is that Geiger intended to mislead the PTO with respect to the origin, inventorship, and patentability of the subject matter claimed in the ’453 Application.

On June 12, 2018, GeigTech commernced a civil action for alleged infringement of the ’821 Patent and moved for a preliminary injunction against sales of Lutron products that included Palladiom Brackets. By seeking this preliminary injunction, GeigTech attempted to take

advantage of Geiger's misconduct during the prosecution of the '453 Application. In response to GeigTech's motion for preliminary injunction, Lutron independently discovered Somfy tubular motor publications that raised substantial questions as to the validity of the '821 Patent. Not long after being confronted with the withheld Somfy evidence, GeigTech withdrew its claim for alleged infringement of the '821 Patent, but not before GeigTech had attempted and failed to gain an advantage in litigation based on its and Geiger's inequitable conduct.

During the prosecution of the '814 Application, Geiger and GeigTech dumped a blizzard of paper on the PTO but did not effectively cure or purge the effects of the inequitable conduct that occurred during the prosecution of the '453 Application. During the prosecution of the '814 Application, Geiger and GeigTech did not make any affirmative showing of patentability over the previously withheld references. During the prosecution of the '814 Application, Geiger and GeigTech continued to conceal Mr. Taylor's role in conceiving and disclosing the claimed "invention" to Geiger, as well as his collaboration with Geiger. GeigTech has also failed to make any timely disclaimer of the '821 Patent or any claims therein, even though "[t]he same principle which forbids a patentee to assert a right to more than he has actually invented compels him to disavow the right as soon as he discovers that it has been unjustly claimed." *Ensten v. Simon, Ascher & Co.*, 282 U.S. 445, 452–53 (1931).

By reason of the inequitable conduct set forth above and the unclean hands of at least GeigTech and Geiger, the '872 Patent is unenforceable and GeigTech's claim for alleged infringement of the '872 Patent is also unenforceable.

**<u>Reservation of Defenses</u>**

Lutron reserves the right to supplement these defenses with any additional defenses that subsequently become available during discovery or at trial.

## COUNTERCLAIMS

Pursuant to Federal Rules of Civil Procedure 13(a) and (b), Lutron asserts the following counterclaims against GeigTech:

### First Counterclaim
### (Declaratory Judgment of Non-Infringement)

1. On December 3, 2020, GeigTech commenced this civil action for alleged infringement of the ’872 Patent.

2. GeigTech has asserted that Lutron’s making, using, selling, and offering to sell Palladiom Brackets infringes the ’872 Patent.

3. Palladiom Brackets do not, in fact, embody the claimed invention of the ’872 Patent.

4. Lutron’s making, using, selling, and offering to sell Palladiom Brackets does not, in fact, infringe the ’872 Patent.

5. Lutron has not actively induced any person to infringe the ’872 Patent.

6. Lutron has not contributed to any person’s infringement of the ’872 Patent.

7. An actual controversy exists between Lutron and GeigTech with respect to whether Lutron’s has infringed or is infringing the ’872 Patent.

8. Lutron is entitled to judgment declaring that it is not liable to GeigTech for infringement of the ’872 Patent.

### Second Counterclaim
### (Declaratory Judgment of Invalidity)

9. Counterclaim paragraphs 1–8, above, are realleged and incorporated by reference as if set forth in full.

10. The ’872 Patent and all claims in the ’872 Patent are invalid for the reasons stated in Lutron’s First, Third, Fourth, Fifth, Sixth, Seventh, and Eighth defenses set forth above.

11. An actual controversy exists between Lutron and GeigTech with respect to whether the claims in the ’872 Patent are invalid.

12. Lutron is entitled to judgment declaring that the ’872 Patent and all claims in the ’872 Patent are invalid.

**Third Counterclaim**
**(Declaratory Judgment of Unenforceability)**

13. Counterclaim paragraphs 1–12, above, are realleged and incorporated by reference as if set forth in full.

14. The ’872 Patent is unenforceable for the reasons stated in Lutron’s Ninth and Twelfth defenses set forth above.

15. GeigTech’s claim for alleged infringement of the ’872 Patent is unenforceable for the reasons stated in Lutron’s Second defense set forth above.

16. An actual controversy exists between Lutron and GeigTech with respect to whether the ’872 Patent is unenforceable.

17. An actual controversy exists between Lutron and GeigTech with respect to whether GeigTech’s claim for alleged infringement of the ’872 Patent is unenforceable.

18. Lutron is entitled to judgment declaring that the ’872 Patent and all claims in the ’872 Patent are unenforceable by reason of inequitable conduct and GeigTech having unclean hands.

**Fourth Counterclaim**
**(Declaratory Judgment of Non-Liability)**

19. Counterclaim paragraphs 1–18, above, are realleged and incorporated by reference as if set forth in full.

20. The subject matter claimed in the ’872 Patent is based on and replicates conceptions that Matt Taylor conceived, drew out, and provided to Geiger in 2010.

21. Matt Taylor is an inventor of any invention that may be disclosed and claimed in the '872 Patent.

22. Matt Taylor has granted Lutron a license to practice any invention that may be disclosed and claimed in the '872 Patent.

23. GeigTech's claim for alleged infringement of the '872 Patent is barred, in whole or in part, by license.

24. An actual controversy exists between Lutron and GeigTech with respect to whether Matt Taylor is an inventor of any invention that may be disclosed and claimed in the'872 Patent.

25. An actual controversy exists between Lutron and GeigTech with respect to whether Lutron is licensed and authorized to practice the '872 Patent.

26. Lutron is entitled to judgment declaring that it is not liable for infringement of the '872 Patent, at least because Matt Taylor has licensed Lutron to practice any invention that may be disclosed and claimed in the '872 Patent.

## **Prayer for Relief**

WHEREFORE, Lutron prays that the Court:

A. Dismiss GeigTech's Complaint;

B. Declare that Lutron has not infringed the '872 Patent;

C. Declare that the '872 Patent and all claims therein are invalid;

D. Declare that the '872 Patent is unenforceable;

E. Declare that GeigTech's claim against Lutron for alleged infringement of the '872 Patent is unenforceable;

F. Declare that Matt Taylor is an inventor of any invention disclosed and claimed in the '872 Patent;

G. Declare that Lutron is licensed to practice the '872 Patent;

H. Declare that this is an "exceptional" case under 35 U.S.C. § 285;

I. Award Lutron its reasonable attorneys' fees and costs;

J. Grant such other and further relief as this Court may deem just and proper.

Dated: January 15, 2021

James D. Herschlein
Paul C. Llewellyn
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
T: 212.836.8000
F: 212.836.8689
james.herschlein@arnoldporter.com
paul.llewellyn@arnoldporter.com

James W. Dabney
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, NY 10004-1482
T: 212.837.6803
F: 212.299.6803
james.dabney@hugheshubbard.com

Scott W. Breedlove (pro hac vice forthcoming)
Minghui Yang (pro hac vice forthcoming)
CARTER ARNETT PLLC
8150 North Central Expressway, Suite 500
Dallas, TX 75206
T: 214.550.8188
F: 214.550.8185
sbreedlove@carterarnett.com
myang@carterarnett.com

**ATTORNEYS FOR DEFENDANT**
**LUTRON ELECTRONICS CO., INC.**